UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ELAINE L. CHAO, Secretary of Labor, United States Department of Labor, ) ) ) | |
| Plaintiff, ) | CIVIL ACTION |
| ) | Case No. 05-4149 |
| v. ) | (SDW/MCA) |
| ) | |
| LOCAL 190, NORTH JERSEY AREA, AMERICAN POSTAL WORKERS UNION, AFL-CIO, ) ) ) | |
| ) | |
| Defendant/Third Party Plaintiff, ) ) | |
| ) | |
| v. ) | |
| ) | |
| AMERICAN ARBITRATION ASSOCIATION, ) | |
| ) | |
| Third Party Defendant. ) | |

## **CERTIFICATION OF ELECTION**

The election having been conducted in the above matter under the supervision of the

Secretary of Labor, United States Department of Labor, pursuant to a Consent Judgment and

Order filed on May 2, 2007, Stipulation of Settlement and Order entered May 3, 2007, and

Stipulation to Amend Consent Judgment and Order entered August 28, 2007, in the United States

District Court for the District of New Jersey, in accordance with the provisions of Title IV of the

Labor-Management Reporting and Disclosure Act of 1959 (29 U.S.C. § 481 et. seq.) and in

conformity with the Constitution and Bylaws of the defendant labor organization, insofar as

lawful and practicable, therefore:

Pursuant to Section 402(c) of the Labor-Management Reporting and Disclosure Act of 1959 (29 U.S.C. § 482(c)), and the authority delegated to me,

**IT IS HEREBY CERTIFIED** that the following named candidates have been duly elected to the office designated:

| | |
|---|---|
| Jack Dougherty | President |
| Dennis Bowie | Executive Vice President |
| Veronica Mitchell | Recording Secretary |
| Anne Manimalethu | Secretary-Treasurer |
| Cheryl Sears | Administrative Aide |
| Dale Chavis | Director of Organization |
| Kwan Miller | Motor Vehicle Service Craft Director |
| Mary Walker | Clerk Craft Director |
| Kenneth Wall | Maintenance Craft Director |
| Denise Curry | Trustee |
| Karen Alexander | Trustee |
| Robert Switzer | Trustee |
| Beverly Beville | Chief Steward, Newark Stations & Branches |
| Audrey Stevens-Eteng | Chief Steward, Hackensack Stations & Branches |
| Richard Dock | Chief Steward, Northern New Jersey Metro P & DC |
| Neil Jurman | Chief Steward, New Jersey L & DC |

| | |
|---|---|
| Adele Montalbano | Area Chief Steward, 074 All Associate Offices |
| Barbara Ferrante | Area Chief Steward, 077 All Offices |
| Mila C. Dougherty | Area Chief Steward, 079 All Associate Office |

Attached herewith is a declaration setting forth the protests concerning violations which were alleged to have occurred in the conduct of the election and the findings of our investigation of these protests.

Signed this ⸺2nd⸺ day of January, 2008.

*Patricia Fox*

Patricia Fox, Acting Chief
Division of Enforcement
Office of Labor-Management Standards
Employment Standards Administration
United States Department of Labor

DECLARATION OF PATRICIA FOX

I, Patricia Fox, am Acting Chief, Division of Enforcement, Office of Labor-Management Standards, Employment Standards Administration, United States Department of Labor ("Department or DOL").  Pursuant to an Order dated May 2, 2007, in the United States District Court for the District of New Jersey, the Department supervised the American Postal Workers Union (APWU), Local 190, North Jersey Area Local (NJAL or union) election for the offices of President, Executive Vice-President, Secretary-Treasurer, Recording Secretary, Administrative Aide, Director of Organization, Motor Vehicle Service Craft Director, Maintenance Craft Director, Clerk Craft Director, and Trustee (three positions).[1]   Additionally, although not covered by the court's Order, the election for Chief Steward was held for the following post office locations: Newark Station & Branches, Hackensack Station & Branches, Northern New Jersey Metro P & DC, New Jersey L & DC, and the election of Area Chief Steward at the following post office locations:  074 all associate offices, 077 all offices and West Jersey 079 all associate offices. The supervised, mail ballot election was concluded on September 28, 2007.  Election protests were filed by Frank Arminio, Phil Dempsey, Mike Lovullo, Chuck Ware, and Robert Osorio with the Election Supervisor alleging that violations of Title IV of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA or

---

[1] The following offices were not contested and therefore did not appear on the ballot:  Clerk Craft Director, Chief Steward-Patterson, Area Chief Stewards for both 070 East (Newark) and 070 West (Newark).

Act), 29 U.S.C. § 481 et. seq., occurred in the context of the supervised election. Each of the complainants' allegations is set forth below with an explanation for its dismissal.

1. In a letter dated July 30, 2007, complainant Arminio alleged that he was informed by steward Beverly Beville that candidate Manuela Dougherty (Dougherty) had requested that Beville show Dougherty her voted ballot before mailing it and that Dougherty requested permission to include Beville's name on Dougherty's campaign literature. While, the Department's investigation did not conclusively determine whether Dougherty asked Beville to show her voted ballot, Beville stated that she did not show her ballot to anyone. Similarly, while Dougherty denies asking Beville if she could include her name on campaign flyers, Beville's name did not appear on any of the Dougherty slate campaign literature. There was no violation of the Act.

Complainant Arminio also alleged that Dennis Bowie, Executive Vice President, received salary advances prior to the election and that he might have continued to do so to aid his reelection campaign. The investigation confirmed that Bowie received these advances, but there was no evidence that these advances were used to finance his election campaign. There was no violation of the LMRDA.

2. By email dated August 1, 2007, complainant Dempsey alleged that the union failed to provide requested information necessary for him to conduct a campaign mailing. The investigation revealed that Dempsey, in a hand-

2

delivered letter dated July 21, 2007, requested the total number of members by chief steward areas. The investigation disclosed that the requested information was provided to him on August 2, 2007, and he was able to complete his campaign mailing which was supervised by the Election Committee. There was no violation of the LMRDA.

3. In a letter dated August 7, 2007, complainant Arminio alleged that Jack Dougherty, New Jersey Area Local (NJAL) President, charged $8,670.25 to the union's credit card in 2006. Arminio acknowledged that the money was remitted to the union, but alleged that President Dougherty may have been taking loans to aid in his re-election campaign. The investigation did not reveal any evidence that President Dougherty took any loans from the union for campaign purposes. President Dougherty provided the Department with a signed statement that he has never taken any loans, or any advances on salary, vacation, personal or other leave while he has served in office.

4. By email dated August 11, 2007, complainant Dempsey alleged that the union's dues check-off list (DCO) and the union's mailing list used to mail APWU publications to all APWU members, referred to as the File Maker Pro list (File Maker Pro), contained errors and omissions. He further stated that the lists contained the names of several postal employees who worked in post offices that were not in NJAL's jurisdiction. He further asserted that the union was not thorough in verifying eligibility of members to vote. The investigation revealed that on August 15, 2007, the Election Committee

3

removed approximately 10 members from the DCO list because they were not assigned to a postal facility in NJAL's jurisdiction. Further, the investigation revealed that the Election Committee verified member eligibility by cross-checking the DCO list, dated May 24, 2007, with the File Maker Pro list to identify members who were not eligible to vote, nominate or run for office. Also, the Election Committee obtained Form 1187s, which identify new members, and Form 204s, which identify any members who hold postal service supervisory positions, to verify eligibility. As result of this review, mailing labels were generated after comparing the names on the File Maker Pro list with the names on the DCO list. Any labels bearing the names of any ineligible members were removed. On September 5, 2007, Dempsey was afforded a second opportunity to inspect the membership lists prior to the File Maker Pro list being mailed to the Honest Ballot Association for the ballot mailing on September 7, 2007. There was no violation of the LMRDA.

5. In his email dated August 11, 2007, complainant Dempsey alleged that members of the mail handler craft were denied the opportunity to nominate candidates for office as a result of not being mailed a combined nomination and election notice. The investigation confirmed that the combined notice of nomination and election was not mailed to members of the mail handlers craft because the union incorrectly believed that mail handler craft members were not eligible to participate in APWU local elections. The investigation, however, confirmed that these members are eligible to vote in APWU election

4

if the members pay full dues and are in good standing.  The investigation further revealed that 34 mail handler craft members were eligible to vote.  Thus, the failure to mail a combined notice of nominations and election to the 34 members of the mail handler craft unit of the NJAL membership violated section 401(e) of the LMRDA, 29 U.S.C. 481 (e), which requires that not less than 15 days prior to the election notice shall be mailed to each member at his last known home address.  This violation, however, has been remedied.  The 34 members of the mail handler craft unit were mailed a revised nomination election notice on August 24, 2007, to reflect the new dates and times for nominations and election.  Nominations were reopened for the entire unit of mail handlers craft members.  In a subsequent letter dated August 27, 2007, complainant Arminio protested that the rest of the membership was denied the opportunity to re-nominate candidates for office.  Section 401(c) of the Act requires that in every election required to be held by the LMRDA, a reasonable opportunity shall be given for the nomination of candidates.  Inasmuch as all other members were given an opportunity to nominate candidates for office, the union met the requirements of the Act.  There was no violation of the LMRDA.

6. In his email dated August 11, 2007, complainant Dempsey alleged that a request to make a targeted mailing to members enrolled in health benefit plans was not honored by the union.  The investigation revealed that there are 13 categories on the membership list, from which members could elect to make

5

a targeted mailing, but members enrolled in a health benefit plan is not one of those categories. The categories are: employee ID number, first name, last name, craft, job title, finance number, pay location, work location city, status, level, step, birth date and gender. The investigation revealed that the union removed health benefit plan information from their public records to preserve members' medical privacy. Consequently, candidates did not have the ability to make a targeted mailing to members enrolled in benefit plans because this designation was not a category on either membership list. There was no violation of the LMRDA.

7. Complainant Arminio, by emails dated August 13, 2007 and August 22, 2007, protested that the union did not inform the candidates of the nominees for all offices. The investigation revealed that the Election Committee mailed a list of nominees to all candidates on August 24, 2007. There was no violation of the LMRDA.

8. Complainant Arminio, in a letter dated August 27, 2007, and complainant Dempsey, in an email dated August 26, 2007, alleged that the mailing of local memoranda of understanding (local agreements) to members constituted campaigning. The investigation revealed that the union mailed a copy of the new collective bargaining agreement (CBA) to members and that it is past practice of the union to mail such documents to members. While the mailing of the union's CBA occurred during the election period, the CBA does

6

not constitute campaign material and did not promote the candidacy of any candidate for office. There was no violation of the LMRDA.

9. Complainant Lovullo, by facsimile dated August 28, 2007, protested that Stephen Craig, President of Mail Handlers Local 300, circulated a letter in the Newark Main Post Office advising Local 300 members not to participate in the APWU election of officers for the "Clerk Craft Director" position because the clerk craft members are not in the APWU bargaining unit. The investigation confirmed that a letter, dated August 28, 2007, was circulated among members of the Mail Handlers Union. A review of the letter indicates that the intent of the letter was to advise Mail Handlers Local 300 members of their right to vote, nominate, and hold office in the clerk craft of the APWU. The letter also advised them that the choice of officers for the clerk craft should be decided by the full time clerk members of APWU. Further, the investigation did not disclose any evidence that any members of the mail handlers union were discouraged from participating in the APWU election. In any event, the clerk craft director position was not on the APWU ballot since the nominee was unopposed. There was no violation of the LMRDA.

10. By letter dated August 30, 2007, complainant Arminio alleged that incumbent candidate President Dougherty's letter dated August 29, 2007, regarding a cost-of-living adjustment (COLA) increases to the membership was union financed campaigning. The investigation confirmed that the union mailed a letter to the membership regarding the COLA that they would be

7

receiving effective September 1, 2007. The investigation also revealed that President Dougherty had previously distributed to the membership a document dated March 8, 2007, announcing a COLA increase and providing additional information regarding the implementation of the COLA. While section 401(g) of the LMRDA, 29 U.S.C. § 481, prohibits the use of union funds to promote the candidacy of any person in an election subject to LMRDA, this letter does not fall within the prohibition. While this letter was distributed during the election period, it is merely a factual statement of an issue of interest to the membership. Inasmuch as the content of the letter does not promote the candidacy of any person in the election, it does not constitute the use of union funds to campaign,. There was no violation of the LMRDA.

11. By letter dated August 30, 2007, complainant Arminio protested that the Election Committee mailed a notification to eligible candidates with the incumbents' names displayed in bold lettering. By email dated August 31, 2007, complainant Ware also filed a complaint regarding the same document alleging that Jack Dougherty and his slate mailed a candidates list to the membership with their names and the word incumbent in "large and bold" type. Complainant Arminio further alleged that incumbent candidate Dale Chavis distributed the document at the Newark Post Office, and complainant Dempsey alleged that the notice was posted throughout the union. The investigation revealed that Susan Walters, Election Committee Chairperson, mailed a list of nominees to all candidates on August 24, 2007. The

8

investigation revealed that the document was intended to be informational and that the incumbents' names were listed in bold to avoid any confusion. In races where there was no incumbent, the names were uniformly presented in regular type font. The document was not mailed to the entire membership, just to the candidates, and there was no evidence supporting the allegation that the document was posted or distributed throughout the union. There was no violation of the LMRDA.

12. By email dated September 5, 2007, complainant Dempsey alleged that problems arose from his second inspection of the membership list on September 5, 2007. The investigation revealed that the union erred when it did not provide Dempsey with the most current DCO List for his review. The list that was provided represented pay period 10. Dempsey should have been provided the list for pay period 11 as that was the most current list. The investigation revealed that when the discrepancy was noticed, the union provided Dempsey with the correct DCO List for pay period 11 for his review. The union granted him another opportunity to review the list. As a result of this review, Dempsey again alleged, as he did in his August 11, 2007 protest, that the list contained inaccuracies. As articulated above, the Election Committee, prior to the tally, reviewed the most recent DCO List, File Pro Maker List, and Forms 1187 and 204 before culling the membership list to remove the names of any members ineligible to vote before mailing the list to

9

Honest Ballot Association for the September 7, 2007 ballot mailing. There was no violation of the LMRDA.

13. By letter dated September 6, 2007, Arminio alleged that a letter mailed by the union constituted campaigning with union funds. The investigation revealed that the letter encouraged all members to vote in the election and informed them that all members would have a chance to win a prize if the members mailed in their ballots. The investigation revealed that the letter encouraging members to vote did not promote the candidacy of any candidate for office and does not constitute prohibited campaign material. There was no violation of the LMRDA.

14. By letters dated September 11, 2007, and October 1, 2007, complainant Arminio and complainant Osorio, respectively, protested that a member, Milan Sabo, received campaign literature from candidate Renee Bowers-Butler that was not postmarked and in violation of election rules which provided that mailings be done through the union. The investigation revealed that the election rules provided that any candidate who wished to mail campaign literature had to furnish the Election Committee with stamped envelopes already sealed and stuffed with the candidate's literature. The investigation disclosed that Bowers-Butler made and paid for two partial campaign mailings on September 6 and 7, 2007. The investigation revealed that she used union labels in the presence of election committee members at the union hall on both of these days and that she did not make any additional

mailings.  The investigation also established that mail can arrive at a final destination without a postmark or cancelled stamp on the envelope because machines can inadvertently process two envelopes at once.  There was no evidence of any unsupervised or independent mailing by any of the candidates.  There was no violation of the LMRDA.

15. By email dated September 26, 2007, complainant Dempsey complained that ballots that were returned from a postal facility with a finance number different from those of facilities located in the NJAL jurisdiction. The investigation revealed that each employee is assigned a finance number that appears next to the employee's name on the DCO list and each postal facility is assigned a finance number.  The investigation revealed that the election committee verified the finance numbers prior to the tally and removed approximately 10 names from the list whose finance numbers were not in NJAL's jurisdiction. There was no violation of the LMRDA.

16. By email dated September 26, 2007, complainant Dempsey complained that ballots were returned from members who could not be identified using the most recent DCO Lists. The investigation disclosed that the union used the most recent DCO Lists, pay periods 11 , to verify the mailing of ballots to eligible members and pay period 17 to verify the eligibility of members to vote, and that the DCO Lists had been updated just prior to the tally.  There was no violation of the LMRDA.

17. By email dated September 26, 2007, complainant Dempsey complained that ballots were returned from non-pay status members who are ineligible to vote and that those ballots were included in the tally. In accordance with Article 3, Section 1 of the APWU National Constitution, "a member's good standing status shall not be affected by reason of the fact that his/her paycheck for the payroll period in which his/her dues deductions are made is insufficient to permit such dues deduction, by reason of illness, injury, pregnancy leave, lay-off, disciplinary suspension, lockout or strike." The investigation disclosed that of 66 members in non-pay status, 12 of them cast ballots in the election. The investigation revealed that the Election Committee Chairperson contacted the USPS Labor Relations Specialist (Newark) to determine the specific reason for the non-pay status of these members. Of the 12 who voted, one member, Charles Devereaux, was not eligible to vote because he had not paid his dues and was not excused by any reason listed in Article 3, Section 1 of the APWU National Constitution. The return ballot envelope containing his address label was set aside and not included in the ballot tally. The remaining 11 members were determined to be eligible, consistent with Article 3, Section 1 of the APWU National Constitution since they were either absent on injury leave or disciplinary suspension. There was no violation of the LMRDA.

18. By both email and letter dated and received on October 9, 2007, complainant Arminio alleged that a campaign flyer supporting the incumbent

12

candidates and containing images and depictions from the Office of Labor Management Standards' (OLMS) home page on the DOL website was anonymously distributed around the Newark post offices, along with other campaign literature critical of Arminio's campaign. The allegation does not involve a violation of the LMRDA. Complainant did not allege and the investigation did not reveal the use of union or employer funds to produce the literature or that the literature gave the appearance of DOL support of any candidate. Further, the Act does not and unions may not regulate the contents of campaign literature. A union may not require that it be permitted to read the literature before distribution nor may the union censor the campaign literature in any way, even if the literature includes derogatory remarks about other candidates. *See,* 29 CFR § 452.70. There was no violation of the LMRDA.

19. By both email and letter dated and received on October 9, 2007, complainant Arminio alleged that incumbent officers campaigned on employer time. The investigation did not substantiate this claim, and complainant Arminio did not provide any names, work facilities or specific information regarding this allegation. There was no violation of the LMRDA.

20. By both email and letter dated and received on October 9, 2007, complainant Arminio alleged that pricing for campaign literature was arbitrarily determined by the union secretary-treasurer and not uniformly applied to all candidates. The investigation revealed that the cost to each

13

candidate was determined by the number of "helpers" candidates brought with them to the mailing and how many committee members were needed to supervise each candidate's mailing, as well as the cost of the labels. There is no evidence that the amount charged Arminio for his campaign mailing was arbitrary. There was no violation of the LMRDA.

21. By both email and letter dated and received on October 9, 2007, complainant Arminio alleged that candidates Renee Bowers-Butler and Adele Montalbano made independent mailings that were not postmarked. As discussed above in allegation 13, the investigation did not disclose any evidence that Bowers-Butler or any of the other candidates made independent mailings. All campaign mailings were done through the union and supervised by the Election Committee. During the campaign mailings, no candidate was observed leaving the union in possession of mailing labels. In fact, the investigation disclosed that 10 members made campaign mailings at the union hall. The members are: Phil Dempsey (2 mailings), Renee Bowers-Butler (2 mailings), Frank Arminio ( 2 mailings), Tyeast Spikes, Adele Montalbano, Barbara Ferrante, Beverly Beville, Gail Cogen, Jack Daugherty and Richard Dock. In each instance, members paid the union by check, except Dempsey, who, at the time of the Department's investigation, had not paid the union for his second mailing. There was no violation of the LMRDA.

22. By both email and letter dated and received on October 9, 2007, complainant Arminio alleged that mailing labels provided to him for his

14

campaign mailing were not the same as those given to other candidates. The investigation revealed that all candidates who requested a full mailing were provided the same uniform set of labels containing 2,020 names. The only deviation was for members requesting a partial mailing, in which case labels were provided for the specific segment of the membership. There was no violation of the LMRDA.

23. By both email and letter dated and received on October 9, 2007, complainant Arminio alleged that ballots may have been tampered with at the West Jersey P & DC postal facility located in Whippany, New Jersey; at the DVD mail processing facility located in Kearny, New Jersey; and that Newark chief steward Yusef Baker may have engaged in ballot tampering. With regard to his ballot tampering allegation at the West Jersey P & DC postal facility located in Whippany, New Jersey, complainant Arminio alleged that personnel was switched at the facility where ballots were passing through the sorting process. He implied that the substituted employees may have taken ballots out of circulation, voted them, and then mailed them to the Honest Ballot Association. The investigation disclosed that when mail is received at the West Jersey P & DC facility for processing and routing, it is placed on a conveyor belt where it ultimately gets coded by "multi-line employees" to be optically scanned for final delivery. Normally, there are only one or two employees who are responsible for coding the mail, and this normally occurs on the Tour 1 shift. The investigation also revealed that the area where mail is

15

coded to be delivered is monitored by cameras and that it is highly unlikely that an employee would tamper with mail pieces on the work floor.

The Department reviewed "employee moves reports" for July, August and September 2007 to determine who was assigned to the "multi-line" during this period. The report reflects that on September 8, 2007, the date that complainant Arminio believes that blank ballots may have been received at the West Jersey P & DC facility from Floral Park, New York for processing, two employees, N. Patel and W. Baginski, worked the Tour 1 shift which represented pay period 19, week 1. A review of the prior months indicated that Baginski was scheduled for that particular shift in pay periods 15 through 20. The only pay period that Patel was scheduled to work that particular job during the three month timeframe was pay period 19, week 1. Consequently, there is no evidence that personnel were switched at the facility where blank ballots were being processed. There was no violation of the LMRDA.

With regard to his allegation that there may have been ballot tampering at the DVD mail processing facility in Kearney, New Jersey, the investigation revealed that complainant Arminio believed that the way in which the Honest Ballot Association mailed the ballots overwhelmed the mail sorting machine and that some envelopes had to be hand sorted. While complainant Armino did not allege a specific instance of ballot tampering or provide any evidence of such, he suggested that it was a possibility since the plant manager was friendly with the NJAL President. The investigation disclosed that the

16

machines at the DVD facility have a sizeable capacity for normal mail processing. The investigation revealed that ballots from the NJAL 2007 election were not hand-sorted because the DVD machines were able to consistently process the average flow of mail. Furthermore, the investigation established that the DVD plant manager, while he knows the NJAL officers, he interfaces with them infrequently and does not have a personal relationship with the NJAL President. There was no violation of the LMRDA.

With regard to complainant Arminio's allegation that former Newark chief steward Yusef Baker may have engaged in ballot tampering because he was observed at the Newark Main Post Office with "2 or 3 ballots in his back pocket," the investigation did not reveal any evidence of tampering by Baker. When interviewed, Baker denied that he tampered with ballots and stated that the only ballot that he handled was his own. The investigation included a review of the ballots, and no evidence of tampering was found. There was no violation of the LMRDA.

The Department has concluded from its investigation and analysis that the violation of Title IV of the Act that occurred during the September 28, 2007 supervised election has been remedied and could not have affected the outcome of the election. Accordingly, the election held pursuant thereto complied with the District Court's Order and the results of the supervised election are certified.

17

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this ___2nd___ day of ___January___ 2008, in the City of

Washington, District of Columbia.

Patricia Fox

Patricia Fox
Acting Chief, Division of Enforcement
Office of Labor-Management Standards
Employment Standards Administration
United States Department of Labor

18